

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **LEONARD THOMAS WITT,** | ) | CASE NO. 7:17CV00438 |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| **REDMAN, ET AL.,** | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| **Defendants.** | ) | |

The plaintiff, Leonard Thomas Witt, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging claims of excessive force and deliberate indifference to his serious medical needs and related claims, in violation of his constitutional rights. At issue in this memorandum opinion are defendants' motions for summary judgment addressing Witt's claims related to his medical care.[1] After review of the record, the court concludes that these motions must be granted.

### I. Background

A. Witt's Allegations[2]

1. The Use of Force Incident

At about 11:18 a.m. on September 24, 2015, Witt was involved in an altercation with correctional officers. Among other things, he states that officers punched him in the mouth,

---

[1] For brevity's sake, the court will refer to the parties who have filed these motions (ECF Nos. 40, 42, 48, 61, 65, and 76) as "the medical defendants." The court will address separately the partial motion to dismiss filed by another group of defendants (ECF No. 45) concerning matters related to the alleged use of excessive force.

[2] This summary of Witt's evidence is taken from his verified complaint and attached exhibits that he incorporates by reference.

kicked him in the face, restrained him, picked him up using the chain attached to his handcuffs and shackles, which were excessively tightened, and transported him to Segregation.

In segregation, a nurse examined Witt. She logged her observations and then left the cell without treating the open wounds on his wrists, ankles, mouth, and forehead. Witt complained to night shift officers that he was in "unbearable pain all over his body." Compl. 11, ECF No. 1. The officers told him to file a sick call request, and he would be seen in the medical unit the next day. He complains that he went 24 hours without any treatment for his pain or injuries.[3]

On September 24, Witt filed an informal complaint form[4] about not having received medical treatment for his physical injuries. Compl. Ex. A, at 2, ECF No. 1-1. Ms. Landrum received this form on September 25 and responded on September 30, stating: "You were seen and treated on 9/24/15 by the nurse. If you are still having issues please put in a sick call following the directions given on your assignment to special housing." Id.

Witt filed a regular grievance on October 5, complaining that no one had treated his cuts and bruises on September 24. He also claimed that the pain medication "did not work" and stated: "I paid for medical treatment. I shouldn't have to sign up for sick call to receive pain killers. I need to see a hand specialist my hand is not broken, it nomed [sic]. I have nerve damages that I was never treated for. I'm requesting to be treated without the resubmitting a sick call slip." Id. at 3. Warden Woodson ruled Witt's grievance "UNFOUNDED," stating: "Ms.

---

[3] Among Witt's exhibits is a grievance appeal in which he states that on September 24, 2015, he filed an emergency grievance and received some pain medication at 10:21 p.m. that same night. See Compl. Ex. A, at 5, ECF No. 1-1.

[4] The court takes judicial notice of the fact that filing an informal complaint form is generally the first step an inmate will take under the Virginia Department of Corrections ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1. Depending on the issue raised in the form, it will be assigned to an appropriate staff member, who should write a response on the form and return it to the inmate within fifteen days. If dissatisfied, the inmate may then take the next step under OP 866.1 by filing a regular grievance. The warden or his designee will investigate the matter and issue a Level I response to the inmate, who can then appeal to the regional administrator for a Level II response.

Landrum, HSA states you were seen and treated on 9-24-15 by the nurse. . . . According to documentation you were seen and treated by the doctor on 10-9-15 per your request and medication was ordered. There was no evidence found to support your allegations." Id. This finding was upheld on appeal.

Witt states that the doctors at the Augusta medical department identified the numbness he was experiencing in his left hand and right toes as "'nerve damage' that was developed as a result of the extreme tightness" of the restraints the officers used on September 24, 2015. Compl. at 12. Dr. Landauer[5] and Dr. Moreno treated Witt for this condition and prescribed "nerve damage medication." Id. Witt complains that these doctors "are not foot or hand specialists who specialize in the field of nerve damage." Id. Witt states that "none of the doctor[s'] methods over an eleven month period brought [him] any kind of relief or came close to relieving the numbness from [his] toes and left hand," and yet, these doctors never referred Witt to a specialist. Id. Witt also blames Mediko, PC, the agency that provides medical services to Augusta's inmates, and Mediko's "Head Doctor," Dr. Teklu,[6] for the alleged shortcomings of their employees. Id. at 4.

2. The "Allergic Reaction"

Witt also alleges that "both doctors [Moreno and Landauer] failed to monitor the strength and effects" of the medications they had prescribed to him. Id. at 12. On July 11, 2016, Witt filed an offender request to the medical department, stating: "I'm having a very serious allergic reaction. My inside was frying." Compl. Ex. A, at 9. Witt complained that his medication was too strong and was making him sick, but no one was monitoring his medication. He also stated

---

[5] In the complaint, Witt identified this defendant as Dr. Landaver. The defendants' pleadings indicate that the doctor's name is properly spelled Landauer. The court will direct the clerk to correct the docket accordingly.

[6] In the complaint, Witt identified this defendant as Dr. Tekly. The defendants' pleadings, however, indicate that his name is properly spelled Teklu. The court will direct the clerk to correct the docket accordingly.

3

that the taste of the medication stayed in his mouth, and he smelled it when he blew his nose or used the toilet. Witt declared that the medical treatment and pain medication provided at Augusta were not working. He reported that his left hand was "getting more numb[] by the months" and that he needed "to see a hand specialist" to get proper treatment. Id. In response to this request form, Nurse Damen wrote: "You haven't been seen by the doctor since Feb. Please put in a sick call request if you need to. Your medication expires in Aug." Id. No one provided Witt with immediate treatment for the symptoms that he described as an allergic reaction. He "suffered for over a period of sixty days [from] the effects" of the reaction "until the medication was out of his system entirely." Compl. at 13.

3. Medical Records and Photocopies

On July 10 and 24, 2017, Witt filed request forms to the medical department, asking to review his medical file and buy photocopies of certain pages from it, related to the use of force incident in September 2015. Ms. Landrum allegedly did not respond to these requests properly or provide the requested copies within fifteen days as required by prison policy. Witt then filed grievances about this problem that were rejected as requests for services or were otherwise denied. Witt did not obtain copies of these records until after his transfer to another prison in October 2017. Witt alleges that Nurse Landrum acted as she did to cover up the medical department's failure to provide him proper medical treatment for his injuries on September 24, 2015.

## B. The Defendants' Evidence[7]

### 1. The Use of Force Incident

If an inmate is experiencing acute symptoms, he should submit a sick call request to be scheduled to see a physician. When Witt entered Segregation after the use of force incident on September 24, 2015, a nurse explained this procedure to him. The nurse also examined him and noted the following injuries: abrasions to his left temple, right lower lip, both wrists, and both ankles. The nurse recorded that Witt complained of some numbness in his left wrist, but that he could rotate it and make a fist. The nurse found that no immediate treatment was needed. After Witt made further complaints that night of pain from his abrasions, a nurse visited him at 6:00 a.m. in Segregation. She examined him and instructed him to take Ibuprofen 200 mg.

On September 27, Witt complained that his left wrist pain had not improved. The nurse who examined Witt referred him to see a doctor, and an appointment was scheduled for October 9. In the meantime, a doctor ordered an X-ray of Witt's left wrist that was performed on September 29. Dr. Moreno reviewed the X-ray results, which revealed no fracture. Witt was informed of these results on October 1.

Dr. Landauer examined Witt on October 9, 2015. She observed no swelling or weakness in his left wrist, although he complained of severe pain and tingling. She diagnosed Witt with acute symptoms of carpal tunnel and prescribed Prednisone. She also recommended that Witt wear a brace once he left Segregation and returned to General Population.

On October 29, 2015, Witt complained to a nurse of ongoing numbness from his hand to his elbow and in his toes. The nurse referred him to a doctor. Dr. Landauer examined Witt on

---

[7] This summary of the medical defendants' records, undisputed unless otherwise noted, is taken from the affidavits of Diane H. Landauer, M.D., Virginia Damen, R.N., and Kaveh Ofogh, M.D., founder and chief executive officer of Mediko, PC, the health care services company that Witt has named as a defendant. See ECF Nos. 63, 67, and 78. The affidavits are supported by copies of Witt's medical records from the time period when he was incarcerated at Augusta.

November 6, 2015. She noted no deformity to the left wrist but documented a well-healed laceration on the left thumb. Witt's feet had normal pulses. Dr. Landauer assessed Witt with left wrist and hand pain and tingling that worsened at night. She prescribed nortriptyline 25 mg (to treat nerve pain) and a wrist brace. She also ordered blood work and told Witt to follow up in a month. The blood work was performed on November 13, and Dr. Moreno reviewed the results, which were normal. Witt refused the wrist brace, stating that it irritated his hands and made them throb.

Dr. Landauer saw Witt again on December 4, 2015, after he complained of continued wrist discomfort and tingling to his left elbow and left shoulder. His physical examination showed no swelling, no wounds, no deformity, and full range of motion. His left wrist was tender on extension. Dr. Landauer prescribed an analgesic balm and Prednisone (to treat inflammation). She also instructed Witt on how to perform gentle exercises to improve his symptoms over time.

At a follow up appointment on January 14, 2016, Witt complained of continued tingling in the left hand and shoulder. Dr. Landauer prescribed another round of analgesic balm and renewed the prescription for nortriptyline 25 mg. She did not believe that further testing was indicated at that time.

On February 23, 2016, Witt met with Dr. Moreno. Witt complained of chronic numbness and tingling in his left hand and fourth and fifth fingers, numbness in both feet, and left shoulder pain. On exam, Dr. Moreno noted that Witt appeared comfortable and in no acute distress, with a normal gait and no limp. Dr. Moreno increased the dosage of nortriptyline to 75 mg, renewed the analgesic balm, and prescribed Naprosyn (to treat pain).

Witt's medical records from Augusta do not include any additional complaints from him until May 2016. A nurse evaluated Witt for a work physical on May 15, 2016, and he denied illness and complaints at that time.

2. The "Allergic Reaction"

On July 11, 2016, Witt submitted an appointment request to the medical department, complaining that he was having an allergic reaction to a medication. Per procedure, Nurse Damen reviewed the request. Request forms are for nonemergency situations. See Pl.'s Counter Aff. Ex. 6, ECF No. 80-1. If an inmate is having acute symptoms and believes he needs a doctor's immediate attention, the proper procedure is for him to file a sick call request. Nurse Damen states that, in her clinical judgment, she did not believe that the symptoms Witt's request form described resulted from an adverse drug reaction or that they required immediate medical attention. She advised Witt to file a sick call request if he felt he needed to see a doctor. The medical records do not reflect that Witt made a sick call request or submitted additional requests about his suspected allergic reaction in July 2016.

On October 14, 2016, Nurse Damen saw Witt for complaints that he was having what he perceived to be an allergic reaction to a medication. She noted his complaints of right-sided head pain and colored nasal discharge. He claimed that he had experienced these symptoms since he began taking nortriptyline (first prescribed in November 2015) and that he could still taste the medication, although it had been discontinued in August. Witt also reported nerve pain in his toes, wrists, and fingers. Nurse Damen referred him to see the doctor.

On October 27, 2016, Dr. Landauer saw Witt for these reported symptoms. He also complained of right knee pain and head pain and reported his belief that the nortriptyline had aggravated his nose and throat. The results of Dr. Landauer's physical exam were within normal

7

limits. She observed no swelling in Witt's right knee and noted that he had full range of motion in his left wrist. The doctor diagnosed Witt with right knee pain and right nose sinusitis. She recommended a left wrist splint, but Witt declined it. The doctor also ordered an X-ray of Witt's right knee[8] and prescribed Ibuprofen 200, Prednisone 20 mg, and Azithromycin 250 mg (an antibiotic).

To Dr. Landauer's knowledge, and according to the medical records, October 27, 2016, was the last time Witt saw any medical provider at Augusta. After that date, the medical department received no further complaints from Witt about an allergic reaction. On October 20, 2017, Witt was transferred from Augusta to another VDOC prison facility.[9]

C. Claims and Procedural Background

Liberally construing Witt's § 1983 complaint, he alleges the following claims for relief:[10] (1) Ms. Watford acted outside her job description on September 24, 2015, thereby causing or failing to protect Witt from events that inflicted cruel and unusual punishment on him; (2) Sgt. Redman used excessive force against Witt that day; (3) Major Russell and Investigator Lokey conspired to falsify and/or withhold information about Witt's injuries from the state magistrate; (4) Warden Woodson and Regional Administrator Ponton conspired to uphold the result of Investigator Lokey's investigation of the September 24 incident, and did not order a new investigation; (5) Nurse Landrum, as a medical supervisor at Augusta, failed to ensure that Witt received immediate medical treatment on September 24, 2015; (6) Dr. Landauer, Dr. Teklu, Dr. Moreno, and their employer, Mediko, PC, provided ineffective medical care for Witt's nerve

---

[8] The record indicates that Witt underwent an X-ray of his knee on November 1, 2016, with normal results. See Mediko Mem. Supp., Ofogh Aff. Ex., at 45, ECF No. 67.

[9] Witt is currently incarcerated at Lunenberg Correctional Center.

[10] Witt's complaint does not number several of his claims. Accordingly, the court has assigned a different numbering system to place all claims approximately in chronological order.

damage and failed to monitor "the strength and effects" of medication they prescribed, causing Witt to suffer an ongoing "allergic reaction"; (7) in July 2016, Nurse Damen denied Witt access to a doctor for treatment of that "allergic reaction"; and (8) in July 2017, Nurse Landrum "disregarded and denied" Witt's requests to review and purchase photocopies of portions of his medical records to cover up medical department errors. Compl. at 7-12.

The medical defendants (Nurse Landrum, Dr. Moreno, Dr. Teklu, Nurse Damen, Mediko, and Dr. Landauer) have filed separate motions for summary judgment, supported by affidavits and medical records. Witt has responded with affidavits and other exhibits, making the motions ripe for disposition.

## II. Discussion

### A. The Summary Judgment Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court must view the record as a whole and draw all reasonable inferences from the facts in the light most favorable to Witt, as the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Witt "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[11] Anderson, 477 U.S. at 248.

---

[11] The court has omitted internal quotation marks, alterations, and citations here and elsewhere in this opinion, except where otherwise noted.

9

The medical defendants have filed affidavits and documentation in support of their motions, arguing that they did not act with deliberate indifference to any serious medical needs. Accordingly, to survive the defendants' motions, Witt must have presented sufficient evidence that could carry the burden of proof of his claims at trial. Shaw, 13 F.3d at 798. "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

B. Initial Matters

1. Official Capacity

State officials, in their official capacities, cannot be sued under § 1983 for monetary damages. See Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Thus, the court will grant summary judgment for the medical defendants as to any claims against them in their official capacities. The court will separately address Witt's claims against them in their individual capacities, however.

2. Claims (1) through (4) and Dr. Teklu

Witt does not allege that each of the defendants he has named was personally involved in each of the claims presented in his complaint as required for liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that to establish defendants' liability under § 1983, "a plaintiff must plead that each . . . defendant, through the official's own individual actions, has violated the Constitution"). For that reason, the medical defendants are entitled to summary judgment as to any claim that does not name them, including Claims (1) through (4) about the excessive force incident and investigation.

Moreover, because Witt states no facts about actions taken by Dr. Teklu, personally, that violated his constitutional rights, the court also will grant summary judgment for this defendant.

Id. Indeed, Witt provides no evidence that Dr. Teklu worked at or even visited Augusta or otherwise learned of Witt's medical concerns at that facility.

3. Mediko

The court will also grant summary judgment for Mediko, PC, as a defendant. It is undisputed that Mediko is a private company that provides medical services to VDOC inmates.

> Private companies . . . cannot be held liable for violating a plaintiff's rights solely because they employ an individual who committed an unlawful act. Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). Rather, they can be sued under § 1983 only if the violation results from the company's custom or policy. Id. Cf. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (holding that there is no vicarious liability against local government entities for § 1983 claims).

Sorrick v. Manning, No. CV TDC-16-0709, 2017 WL 3668755, at *8 (D. Md. Aug. 22, 2017), aff'd, 717 F. App'x 300 (4th Cir. 2018). Witt has alleged no specific custom or policy of Mediko that resulted in the alleged shortcomings of the medical care he received at Augusta. Accordingly, he cannot hold Mediko liable for the actions of its employees, and the company is entitled to summary judgment as a matter of law.

4. Prison Policy Violations

Allegations that state officials have not followed their own policies or procedures do not amount to any constitutional violations, and, therefore, they are not actionable under § 1983. See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). Similarly, "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017).

Accordingly, the defendants are entitled to summary judgment regarding any allegation that they did not comply with a prison policy provision or timetable, or for example, that they misused policy by requiring Witt to use a sick call request form to ask for a doctor visit.

C. Medical Care

The Eighth Amendment guarantees prisoners freedom from cruel and unusual punishment. U.S. Const. amend. VIII, § 3. As such,

> [a] prisoner has a constitutional right to the medical care necessary to address his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). And a prison official's "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care. See Estelle, 429 U.S. at 104-05. Importantly, a judicial assessment of deliberate indifference has two aspects—an objective inquiry and a subjective inquiry. See Jackson, 775 F.3d at 178.
> 
> To satisfy the objective inquiry of a deliberate indifference claim, "the inmate's medical condition must be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See Jackson, 775 F.3d at 178 (internal quotation marks omitted). A medical condition is shown as objectively serious when it "would result in further significant injury or unnecessary and wanton infliction of pain if not treated." See Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). To satisfy the subjective inquiry of a deliberate indifference claim, the plaintiff must show that the public official "knows of and disregards an excessive risk to inmate safety or health." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). A deliberate indifference claim must satisfy a high bar, and that bar is not met by showing that "an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." See Jackson, 775 F.3d at 178.

Formica v. Aylor, No. 16-7418, 2018 WL 3120790, at *7-8 (4th Cir. June 25, 2018) (unpublished).

In other words, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

12

Amendment." Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, to survive summary judgment, Witt must present evidence showing more than a "mere error of judgment or inadvertent failure to provide medical care, or [his own] mere disagreement concerning questions of medical judgment." Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished).

1. Nurse Landrum—Claim (5)

The court will assume without finding, for purposes of this opinion, that the pain and numbness Witt suffered from his cuts and bruises following the September 24, 2015, incident ultimately qualified as a serious medical need. Witt's claim against Nurse Landrum fails, however, on the subjective inquiry of the deliberate indifference analysis—whether she "knew of and disregarded" any "excessive risk[s]" to Witt's health when she did not ensure that he received immediate treatment for his physical injuries that day. Formica, 2018 WL 3120790, at *9. "[W]hen a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action." Id.

Witt does not claim that Nurse Landrum was present in Segregation on September 24, 2015. Rather, he seeks to hold her liable based on her supervisory role in Augusta's medical department. Supervisory officials may not be held vicariously liable under § 1983 for the unconstitutional conduct of their subordinates, however. Iqbal, 556 U.S. at 676. To hold Nurse Landrum as a supervisor liable for others' failure to provide him immediate treatment that day, Witt must establish (1) that she knew a subordinate's conduct posed a "pervasive and unreasonable" risk of constitutional injury to Witt, and her unreasonably inadequate response to that risk somehow caused the violation of Witt's constitutional rights, Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); or 2) that "conduct directly causing the deprivation was done to

effectuate an official policy or custom for which [Nurse Landrum] was responsible." Strickler v. Waters, 989 F.2d 1375, 1387 (4th Cir. 1993).

Witt makes none of these showings. He does not present evidence that Nurse Landrum, personally or through her supervisory policies, caused the intake nurse not to provide Witt any treatment when he entered Segregation on September 24. By September 25, when Nurse Landrum received Witt's informal complaint form about receiving no treatment, a nurse had already evaluated Witt at 6:00 a.m. that morning and provided him with pain medication. Witt himself does not state what additional treatment he believes was necessary at that time. On September 30, when Nurse Landrum wrote her response to Witt's complaint form, he had seen a nurse again on September 27, had been referred for an examination by a doctor (which occurred October 9), and had undergone an X-ray of his left wrist. On these facts, the court cannot find that Witt has presented any disputed fact by which he could show that Nurse Landrum responded unreasonably to his medical needs by advising him to file a sick call request if he needed further medical care. The court will grant summary judgment for Nurse Landrum as to Claim (5).

2. Dr. Moreno and Dr. Landauer

Liberally construing Witt's submissions, he claims that Dr. Moreno and Dr. Landauer provided ineffective treatments that did not relieve the pain and numbness in his wrist and toes, when they should have referred him to see a nerve specialist. Witt also claims that these doctors should have more closely monitored the effects of medications they prescribed. Witt repeatedly states that the doctors' inactions show their deliberate indifference. He cannot, however, build a § 1983 claim merely by reciting this element of the constitutional standard without facts to support it. See Iqbal, 556 U.S. at 678 (finding plaintiff's pleadings insufficient that tender only

14

"labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement").

The undisputed evidence shows that Dr. Moreno and Dr. Landauer never ignored or refused to provide treatment when they were alerted to Witt's medical complaints. The record reflects that Witt was seen by these doctors multiple times, that Dr. Landauer diagnosed Witt's complaints about his wrist and toes as carpal tunnel, and that both doctors provided treatments or testing directed to address that condition and relieve Witt's symptoms. Over several months in their care, Witt received X-rays, medications for inflammation and nerve pain, adjustments to those medications, a wrist splint, lab work, and instructions for therapeutic exercises. After the last visit with Dr. Moreno on February 23, 2016, Witt did not request further attention from a doctor for the condition of his wrist and toes, or for adjustments to his medication or the prescribed dosage. By claiming that the doctors, nevertheless, should have checked with him about the medication's effects, or should have sent him to a nerve specialist months earlier, Witt is asserting merely his nonprofessional disagreement with their medical judgments. Such contentions cannot prove deliberate indifference. See, e.g., Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."). Witt simply does not present facts showing Dr. Moreno and Dr. Landauer knew that the care they provided to him placed him at an excessive risk of harm at any time. Jackson, 775 F.3d at 178. Witt also presents no evidence that either doctor responded unreasonably to his condition and symptoms as they observed them. See Formica, 2018 WL 3120790, at *9. Furthermore, other than his own self-diagnosis, Witt offers no proof that he suffered any allergic reaction to his

medication. For the reasons stated, the court concludes that Dr. Moreno and Dr. Landauer are entitled to summary judgment.

3. Nurse Damen

In this claim, Witt contends that his report of suffering an allergic reaction in July 2016 should have prompted Nurse Damen to schedule him immediately to see a doctor. Nurse Damen states that she, exercising her professional medical judgment, did not believe the symptoms Witt described required immediate attention from a physician or that they indicated Witt was having an allergic reaction. Indeed, as discussed, the medical records do not include any doctor's diagnosis of an allergic reaction. Witt's mere disagreement with Nurse Damen's assessment of his medical needs is insufficient to show deliberate indifference. Germain, 531 F. App'x at 395. Moreover, Nurse Damen did not ignore Witt's complaint or deny him access to care. She advised him to file a sick call request if he believed he needed medical attention.[12] Witt fails to present any fact showing that this response was unreasonable under the circumstances as Nurse Damen had assessed them. Accordingly, the court concludes that Nurse Damen is entitled to summary judgment as a matter of law.

4. Nurse Landrum—Claim (8)

Witt complains that Nurse Landrum did not ensure that he could review and copy portions of his medical records in July 2017, although prison policies required her to provide such services within fifteen days of a request. Nurse Landrum's alleged violation of this policy, a state regulation, is not actionable under § 1983, which vindicates only federal or constitutional rights. Riccio, 907 F.2d at 1469.

Liberally construing Witt's submissions, he also contends that Nurse Landrum denied him the requested copies of records to cover up events from September 24, 2015. Witt

---

[12] He apparently did so in October 2016, when Dr. Landauer diagnosed similar symptoms as sinusitis.

apparently intended to present medical records with his criminal complaint to show how Sgt. Redman had injured him. Vague and conclusory allegations about mere delays or inconveniences to an inmate's litigation efforts do not support a § 1983 claim that he was deprived of his right to access the court. See Lewis v. Casey, 518 U.S. 343, 35 (1996) (holding that to state § 1983 claim for denial of access to courts, inmate must show injury to litigation efforts, i.e., that a pleading "he prepared was dismissed for failure to satisfy some technical requirement" because of defendant's actions). Witt fails to show that the delay in obtaining the medical records he desired prevented him from filing a criminal complaint, caused officials to decline prosecution, or had any adverse impact on his ability to pursue this § 1983 case. The court will grant Nurse Landrum's motion for summary judgment as to Claim (8).

### III. Conclusion

For the reasons stated, the court concludes that the medical defendants (Mediko, Dr. Teklu, Dr. Moreno, Dr Landauer, Nurse Damen, and Nurse Landrum) are entitled to summary judgment as a matter of law. An appropriate order will issue herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 13th day of September, 2018.

_/s/ Jim Conrad_
Senior United States District Judge