CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 13 2018

JULIA C DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEONARD THOMAS WITT, | CASE NO. 7:17CV00438 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| REDMAN, ET AL., | By: Hon. Glen E. Conrad |
| | Senior United States District Judge |
| Defendants. | |

The plaintiff, Leonard Thomas Witt, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging claims of excessive force and deliberate indifference to his serious medical needs, in violation of his constitutional rights. At issue in this memorandum opinion is the partial motion to dismiss filed by defendants Sergeant ("Sgt.") Redman, John A. Woodson, D. Watford, Henry Ponton, Major Russell, and B. J. Lokey ("the security defendants"), and Witt's response to their motion. After review of the record, the court concludes that the motion must be granted. Witt's claim alleging excessive force against Sgt. Redman in his individual capacity, which is not challenged in the motion to dismiss, will go forward.

### I. Background

At about 11:18 a.m. on September 24, 2015, as Witt was leaving the dining hall at Augusta Correctional Center ("Augusta"), Sgt. Redman told him that Ms. Watford, the unit manager, had asked to speak to him.[1] Witt followed Sgt. Redman to the foyer outside the Watch

---

[1] This summary of factual allegations, stated in the light most favorable to Witt, is taken from his complaint, his response to the defendants' motion, and attachments that he incorporates by reference (ECF Nos. 1 and 56).

Commander's Office, where they waited for Ms. Watford. Witt saw through the window that Ms. Watford was standing just outside the foyer door on the sidewalk. When he tried to walk out the door to talk to her, however, Sgt. Redman jumped on his back and pinned him against a nearby railing. Seconds later, other correctional officers ran up to assist Sgt. Redman. In the ensuing altercation, Sgt. Redman flipped Witt over the railing and punched him in the mouth, and officers kneed and kicked him. With Witt face down on the grass, Sgt. Redman ordered full restraints, which were applied too tightly. The officers then picked Witt up using the chain attached to the restraints and transported him to Segregation.

In Segregation, a nurse examined Witt and logged these observations, now in his medical records: "offender has abrasions to [left] temple, [right] lower lip inside, bilateral wrist and bilateral ankles. Offender has some numbness in [left] wrist. Offender is able to rotate wrist and make a fist. No other complaints." Pl.'s Resp. Ex., at 1, ECF No. 56-1. The nurse instructed Witt on procedures to access medical care from segregation and then left the cell. Witt alleges that he went for 24 hours without any treatment for his pain or injuries.

On October 3, 2015, Witt filed an informal complaint form[2] about being assaulted by Sgt. Redman and others on September 24—being punched in the mouth and kicked in the face, and having restraints "used as [a] weapon to cut open" his wrists and ankles." Compl. Ex. A, at 1, ECF No. 1-1. Major Russell responded: "Your allegations of being assaulted on the day that you were placed into seg has [sic] been reviewed. You were checked by the medical dept. and none of the injuries that you are stating was found when you were taken to seg." Id.

---

[2] The court takes judicial notice of the fact that filing an informal complaint form is generally the first step an inmate will take under the Virginia Department of Corrections ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1. Depending on the issue raised in the form, it will be assigned to an appropriate staff member, who should write a response on the form and return it to the inmate within fifteen days. If dissatisfied, the inmate may then take the next step under OP 866.1 by filing a regular grievance. The warden or his designee will investigate the matter and issue a Level I response to the inmate, who can then appeal to the regional administrator for a Level II response.

Witt raised the same allegations on a regular grievance form, stating that Sgt. Redman had assaulted him with a "deadly weapon"—a "felony charge." Id. at 6. He demanded that the matter be "deeply investigated" and that Sgt. Redman be "brought to justice for his criminal behavior." Id. In the Level I response, Warden Woodson ruled the grievance UNFOUNDED, stating: "Your medical treatment form doesn't state the severity of injuries that you are stating in your complaint form." Id. at 8. Warden Woodson also indicated that an investigation of the alleged assault was ongoing, but "at this time there has been no evidence found to support your allegations of criminal behavior by Sgt. Redman." Id.

In his appeal of the Level I response, Witt stated that Major Russell had "falsified his report to cover up Sgt. Redman['s] assessive [sic] assaultive behavior." Id. Witt reported that the local magistrate was investigating his criminal complaint, and the Commonwealth's Attorney had been informed of Sgt. Redman's actions. In the Level II response, Regional Administrator ("RA") Ponton stated that the investigation of Witt's claims against Sgt. Redman had "revealed no evidence to support [Witt's] allegations." Id. at 11. Witt alleges that Major Russell and B. J. Lokey, Augusta's institutional investigator, "willingly and unlawfully withheld information" from the magistrate to help Sgt. Redman avoid prosecution. Compl. 13, ECF No. 1. Witt complains that after he reported the cover-up to Warden Woodson and RA Ponton, they did not order a new internal investigation. He also alleges that Major Russell saw Witt's injuries on September 24, but did not ensure that he received immediate medical treatment.

Finally, Witt asserts that Ms. Watford triggered the events that caused his injuries on September 24, 2015. She was allegedly directing inmate traffic on the sidewalk, a duty not included in her job description, and did not have security officers escorting her, as policy required.

3

Finally, Witt alleges generally that the supervisory officials should somehow have protected him from Sgt. Redman's actions. He reports that he has permanent numbness in his left hand and in the toes on his right foot that doctors at Augusta have allegedly identified as the result of nerve damage.

Liberally construing Witt's § 1983 complaint, he alleges the following claims for relief against the security defendants:[3] (1) Ms. Watford acted outside her job description on September 24, 2015, thereby causing or failing to protect Witt from events that inflicted cruel and unusual punishment on him; (2) Sgt. Redman used excessive force against Witt that day; (3) Major Russell and Investigator Lokey conspired to falsify and/or withhold information about Witt's injuries from the state magistrate; and (4) Warden Woodson and RA Ponton conspired to uphold the result of Investigator Lokey's incomplete investigation of the September 24 incident, and did not order a new investigation. These defendants have filed a partial motion to dismiss as to these claims. Witt has responded to that motion with a counteraffidavit and attached exhibits, making the motion ripe for disposition.

## II. Discussion

A. The Motion to Dismiss Standard of Review

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[3] Witt's complaint does not number several of his claims. Accordingly, the court has assigned its own numbering to place all claims approximately in chronological order. Witt's claims against other defendants regarding his medical care are not listed here. Motions for summary judgment regarding such claims will be addressed in a separate memorandum opinion and order.

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.[4] Moreover, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a deprivation of a federal right. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) ("The doctrine of respondeat superior has no application" in § 1983 action).

B. Initial Matters

State officials, in their official capacities, cannot be sued under § 1983 for monetary damages. See Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Thus, the court will grant the motion to dismiss as to all such claims. Witt has also sued these defendants in their individual capacities, however.

The court will also grant the motion to dismiss as to any claim that these defendants denied Witt appropriate medical treatment on September 24, 2015. As security and administrative officials, these defendants were entitled to rely on the medical judgment and expertise of the nurse who assessed Witt's injuries on September 24, 2015, and decided that he did not require immediate treatment. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir.1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)).

---

[4] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

5

Moreover, the court must dismiss Witt's claims of policy violations. State officials' failure to follow state prison policies or procedures do not amount to constitutional violations, and, therefore, such actions alone are not actionable under § 1983. See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). Thus, Witt has no actionable § 1983 claim against Ms. Watford for violating policy by standing on the sidewalk without security officers. Similarly, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). As such, an inmate cannot bring a § 1983 claim that officials inadequately investigated a grievance or gave inaccurate responses to a grievance or an appeal. The court will grant the defendants' motion to dismiss as to any claim that they did not comply with a provision of a prison policy or the grievance procedures.

## C. Supervisors' Duty to Protect

The Eighth Amendment guarantees prisoners freedom from cruel and unusual punishment. U.S. Const. amend. VIII, § 3. Under this principle, prison officials have an "obligat[ion] to take reasonable measures to guarantee inmate safety," including a duty to protect them from hazardous situations. Makdessi v. Fields, 789 F.3d 126, 132 (4th Cir. 2015). To succeed under a § 1983 claim that prison officials failed to protect an inmate from harm (by other officers or inmates), in violation of the Eighth Amendment, an inmate must state facts showing that (i) objectively, the prisoner was incarcerated under conditions posing a substantial risk of serious harm, and (ii) subjectively, the official had a "'sufficiently culpable state of mind' to be held liable," namely, the state of "'deliberate indifference'" to the substantial risk of serious

harm. Id. at 133. For purposes of this opinion, the court will presume that the physical injuries Witt incurred on September 24, 2015, were sufficiently serious to meet the objective facet of this standard.

Proving deliberate indifference is difficult and requires showing "more than ordinary lack of due care for the prisoner's interests or safety," and "more than mere negligence." Id. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot [constitute] infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (1994). Specifically, an official is deliberately indifferent "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

Witt seeks to hold Ms. Watford, Major Russell, Warden Woodson, and RA Ponton liable based on their supervisory responsibilities regarding inmates' safety at Augusta. Supervisory officials may not be held vicariously liable under § 1983 for the unconstitutional conduct of their subordinates, however. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). To hold one of these officials liable for others' actions, Witt must establish (1) that the defendant knew a subordinate's conduct posed a "pervasive and unreasonable" risk of constitutional injury to Witt and that the defendant's unreasonably inadequate response to that risk somehow caused the violation of Witt's constitutional rights, Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); or (2) that "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the defendant] was responsible." Strickler v. Waters, 989 F.2d 1375, 1387 (4th Cir. 1993).

Witt makes none of these showings. He does not allege that Major Russell, Warden Woodson, or RA Ponton was present during the incident on September 24, 2015. He also states

7

no facts showing that any particular policy or practice enforced by any of these defendants or Ms. Watford caused Sgt. Redman to act as he did that day. Finally, Witt does not describe any prior incidents of similar circumstances causing harm that would have put these supervisory officials on notice of a significant risk that Witt would be harmed as he was.

Witt apparently blames Ms. Watford for his injuries, because if she had not been standing on the sidewalk without security officers nearby (in violation of policy), Witt would not have moved toward her, and Sgt. Redman would not have intercepted him by using force. The court finds nothing in the record showing that Ms. Watford knew her actions that day created "a substantial risk" that Witt would suffer serious harm. Without alleging facts demonstrating her knowledge of such a risk, Witt as not stated a claim that she was deliberately indifferent. Farmer, 511 U.S. at 847. Rather, his allegations against Ms. Watford present, at the most, a claim of negligence that does not implicate his constitutional rights and is not actionable under § 1983. Id. at 133. For the stated reasons, the court will grant the motion to dismiss as to all Witt's claims that the supervisory officials failed to protect him from the use of force on September 24, 2015.[5]

D. The Investigation and Criminal Complaint

Witt's contentions about the prison's investigation of the September 24 incident, and about some defendants falsifying documents or withholding information from the local magistrate, are far from clear in Witt's complaint. These claims apparently rest on the following facts. Witt's informal complaint form stated that on September 24, he was punched and kicked in the face, his mouth was bleeding inside, his forehead was "busted open" in two spots, and Sgt.

---

[5] Witt does not assert that Ms. Watford could have intervened on his behalf after the officers' use of force began that day, and the court finds no such claim arising from Witt's allegations about this defendant. See Randall v. Prince George's Cnty., MD., 302 F.3d 188, 203-04 (4th Cir. 2002) (holding that official may be liable under § 1983, on a theory of bystander liability, if she: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act).

8

Redman "used handcuffs as [a] weapon to cut open both" of Witt's wrists and ankles. Compl. Ex. 1, at 1, ECF No. 1-1. The Segregation intake nurse (not a defendant) described Witt's injuries that day as "abrasions to [left] temple, [right] lower lip inside, bilateral wrist and bilateral ankles" and "some numbness in [left] wrist." Pl.'s Resp. Ex., at 1, ECF No. 56-1. In responding to Witt's informal complaint form, Major Russell wrote that "none of the injuries that you are stating was found when you were taken to seg." Id. Reviewing this response, Warden Woodson wrote at Level I, "Your medical treatment form doesn't state the severity of injuries that you are stating in your complaint form," and in his Level II response, RA Ponton stated that "[t]he investigation revealed no evidence to support your allegations." Id. at 8, 11. As the court understands Witt's claims about these facts, he contends that in a conspiratorial attempt to prevent Redman from being criminally prosecuted, Major Russell, Warden Woodson, RA Ponton, and Investigator Lokey lied about the extent of Witt's injuries—in these written grievance responses and in Lokey's investigation report (which is not in the record), and that they failed to order reinvestigation after Witt reported the cover-up. The court finds no constitutional claim stated here.

First, Witt's allegations do not state any claim that he was deprived of his constitutional right to seek criminal charges against Redman or others. A citizen's right to "judicial procedures to redress any claimed wrongs" is limited to the ability to "set in motion the governmental machinery . . . and bring [his] complaints to the attention" of judicial officers, to "seek the arrest of another." Leeke v. Timmerman, 454 U.S. 83, 87 (1981). Witt asserts that he was able to file a criminal complaint to the magistrate about Redman's actions on September 24, 2015, that triggered some investigation by state authorities. Furthermore, Witt does not allege that any of the defendants interfered with the information that Witt himself provided to the magistrate. See

9

id. (suggesting possible civil claim where defendants interfered with plaintiff's transmittal of information to magistrate regarding criminal complaint).

Second, Witt was not deprived of any constitutionally protected right because no prison official was criminally prosecuted for what happened to him on September 24, 2015. An individual has no constitutional right to, or any judicially cognizable interest in, the prosecution or non-prosecution of another person. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Consequently, he has no § 1983 claim against any prison official for the information provided to the state prosecutor or the magistrate about the incident at issue, in connection with Witt's criminal complaint. Leeke, 454 U.S. at 87. Similarly, Witt has no actionable § 1983 claim based on the internal investigation proceedings under state regulations or the outcome of that investigation.

In any event, the court finds no evidence of falsification of information to protect Redman. The defendants' statements, in the grievance documents to which Witt points, are consistent with the Segregation nurse's description of Witt's injuries as abrasions, not requiring immediate treatment. As stated, these defendants could rightfully rely on medical staff to determine and record the nature of an inmate's physical injuries and the appropriate course of care. Miltier, 896 F.2d at 854. Moreover, the security defendants could also rightfully include and consider the nurse's assessment of the severity of Witt's injuries as a factor in the investigation as to whether or not Redman and the other officers took the actions Witt had alleged.

Finally, Witt's allegations do not state a viable conspiracy claim against anyone under § 1983. To establish such a claim, a plaintiff must demonstrate that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in

deprivation of a federal right. Glassman v. Arlington Cnty., Va., 628 F.3d 140, 150 (4th Cir. 2010). As the court has already found, Witt fails to state any claim that he was deprived of constitutional rights related to his criminal complaint or the internal investigation. Moreover, his contentions that the defendants acted together or intended to commit any constitutional violation are merely conclusory speculation. Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 422 (4th Cir. 1996) (finding no claim where allegations were "nothing more than rank speculation and conjecture" and did not show anyone's "intent to commit an unlawful objective"). The court will grant the defendants' motion to dismiss as to Witt's claims of conspiracy to falsify information or to otherwise interfere with the internal investigation or with Witt's criminal complaint.

### E. Excessive Force

As stated, the defendants' motion does not argue that Witt's claim against Sgt. Redman in his individual capacity for use of excessive force should be dismissed under Rule 12(b)(6) as insufficient to state a possible Eighth Amendment claim. Rather, the motion concedes that this claim will need to be resolved at the summary judgment stage or at trial. The court agrees.

### III. Conclusion

For the stated reasons, the court concludes that the defendants' partial motion to dismiss must be granted. An appropriate order will issue herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 15th day of September, 2018.

_____
Senior United States District Judge